UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOUGLAS A. WISE,<br>        *Plaintiff,*<br>    *v.*<br>PLAN ADMINISTRATOR, IBM BENEFITS PLAN<br>FOR RETIRED EMPLOYEES,<br>        *Defendant.* | Civil No. 3:13cv1591 (JBA)<br><br>August 5, 2014 |

**RULING ON MOTION TO DISMISS**

Plaintiff Douglas A. Wise, proceeding pro se, brings suit against Defendant Plan Administrator of the IBM Benefits Plan for Retired Employees, alleging Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.*, by failing to disclose the plan documents governing a new benefit under the IBM Benefits Plan for Retired Employees—the Health Reimbursement Arrangement. (*See* Compl. [Doc. # 1] ¶ 15.)   Defendant moves [Doc. # 28] to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim, arguing that it has already disclosed all relevant plan documents to Plaintiff.   Plaintiff moves [Doc. # 26] for jurisdictional discovery and [Doc. # 32] for an evidentiary hearing in an attempt to challenge Defendant's contention that the case is moot. For the following reasons Defendant's motion to dismiss is granted, and Plaintiff's discovery motions are denied.

**I.    Background[1]**

The IBM Benefits Plan for Retired Employees ("the Plan") is an employee benefit plan within the meaning of ERISA, and Plaintiff is a participant in the Plan.  (Compl.

_____

[1] Because Defendant also moves to dismiss Plaintiff's claims pursuant Rule 12(b)(1), in addition to moving to dismiss under Rule 12(b)(6), the Court has included information from outside the four corners of the Complaint in this background section.

¶¶ 5, 8.)   In August 2013, Plaintiff received a letter and a newsletter from Defendant addressed to all Plan participants announcing the Health Reimbursement Arrangement (the "HRA") as a new benefit under the Plan.   (Compl. ¶ 9; *see also* Aug. 2013 Letter, Ex. A to Wise Aff. [Doc. # 31-1]; Aug. 2013 Newsletter, Ex. B to Wise Aff.)   The newsletter stated:   "Complete details of the HRA can be found in the formal plan documents, which are the complete and exclusive statement of the company's obligations under the Plan. The official Plan documents shall govern in the event of a conflict between information contained in these or other documents and statements."   (Aug. 2013 Newsletter at 14; *see also* Compl. ¶ 9.)   In September 2013, Defendant sent a second newsletter regarding the HRA to Plan participants, containing the same language.   (Compl. ¶ 10.)   On October 14, 2013, Defendant sent a third letter to Plaintiff informing him that his surviving spouse election under the HRA was due by December 16, 2013.   (Oct. 2013 Letter, Ex. I to Wise Aff.)   This letter also contained language regarding "formal Plan documents."   (*Id.*)

On September 11, 2013, Plaintiff wrote to Defendant and requested that Defendant send him "a copy of the formal plan documents pertaining to the new Health Reimbursement Arrangement (HRA), along with any other documents under which the HRA is established or will be operated."   (Sept. 11, 2013 Letter, Ex. A to Compl.; *see also* Compl. ¶ 12.)   On September 25, 2013, Plaintiff received a response to his request via email from Dr. Kyu Rhee.   Dr. Rhee stated that Defendant intended to send the summary plan description ("SPD") governing the HRA to Plan participants sometime before the effective date of January 1, 2014.   (Sept. 25, 2013 Email, Ex. E to Wise Aff.; Compl. ¶ 13.) Plaintiff emailed Dr. Rhee the next day, indicating that he had requested the formal plan documents, rather than the SPD, and requesting that the Plan Administrator respond to

his request within the thirty-day time period mandated by ERISA.  (Sept. 26, 2013 Email, Ex. F to Wise Aff.; Compl. ¶ 13.)

On October 11, 2013, the Plan Administrator emailed Plaintiff, informing him that IBM had not yet finalized the document that he had requested, but that it would be provided to him as soon as it was prepared in final form.  (Oct. 11, 2013 Email from Plan Administrator, Ex. G to Wise Aff.; *see also* Compl. ¶ 14.)  The Plan Administrator also indicated that the Plan was not required to have written formal plan documents until the effective date of the HRA.  (Oct. 11, 2013 Email from Plan Administrator; *see also* Compl. ¶ 14.)  That same day, Plaintiff responded to the Plan Administrator's email, expressing his disappointment with Defendant's response and insisting that formal plan documents—as opposed to the SPD—must currently be in existence.  (Oct. 11, 2013 Email from Plaintiff, Ex. H; Compl. ¶ 14.)  On October 30, 2013, Plaintiff filed the instant action, alleging that Defendant had violated its disclosure obligations under ERISA and seeking monetary and injunctive relief.  (*See* Compl.)  As of that date, Plaintiff had not yet received any Plan documents regarding the HRA from Defendant.  (*Id.* ¶ 15.)

On December 6, 2013, Plaintiff emailed counsel for Defendant to again request the formal Plan documents, in addition to a list of all individuals with authority to amend the Plan, and all of the contracts and communications between the Plan and the organizations administering the HRA and the surviving spouse benefit election under the HRA.  (Dec. 6, 2013 Email, Ex. J to Wise Aff.)  Plaintiff also requested that all such documents be made available for his review at IBM headquarters.  (*Id.*)  Counsel for Defendant responded on December 11, 2013, indicating that the SPD had been mailed, and stating that Defendant was not entitled to the other documents he requested under ERISA.  (Dec. 11, 2013 Email, Ex. K to Wise Aff.)

On December 12, 2013, Plaintiff inspected a printer's proof of the SPD at IBM headquarters.  (Alderman Aff. [Doc. # 28-2] ¶ 2.)  Defendant avers that a final copy of the SPD was sent to all Plan participants, including Plaintiff on or around December 13, 2013.  (Brickmeier Aff. [Doc. # 28-3] ¶ 4.)  Defendant further avers that the SPD is the only document that governs the rights of Plan participants with respect to the HRA, and that the SPD was not finalized at the time of Plaintiff's initial document request.  (*Id.* ¶¶ 2–3.)  On December 17, 2013, counsel for Defendant sent Plaintiff an electronic copy of the SPD via email.  (Shea Aff. [Doc. # 28-1] ¶ 3.)

On January 25, 2014, Plaintiff sent another document request to Defendant, seeking all trust agreements for the Plan, and all contracts and agreements with the organizations responsible for the operation of the HRA.   (Jan, 25, 2014 Letter, Ex. L to Wise Aff.)  On January 29, 2014, counsel for Defendant emailed Plaintiff a copy of the formal amendment to the Plan authorizing the establishment  of the HRA, which was executed by Diane Gherson, the Senior Vice President of Human Resources for IBM, on December 19, 2013.  (Jan. 29, 2014 Email, Ex. N to Wise Aff.; Gherson Amendment, Ex. O to Wise Aff.)  On February 25, 2014, Defendant mailed a copy of the Plan's December 22, 2010 trust agreement with JPMorgan Chase Bank, N.A. to Plaintiff in response to Plaintiff's January 2014 document request.  (Feb. 25, 2014 Letter, Ex. M to Wise Aff.)

II.    **Discussion**[2]

Defendant moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6), arguing:  (1) that Plaintiff's request for injunctive relief is moot because he has already received the sole document governing his rights with respect to the HRA—the SPD—and (2) that Plaintiff has failed to state a claim for monetary relief because Defendant could not have produced documents that did not exist and Plaintiff has failed to allege bad faith on the part of Defendant.

A.    **Lack of Subject Matter Jurisdiction**

"When a case becomes moot, the federal courts lack subject matter jurisdiction over the action. . . .  A case is moot, and accordingly the federal courts have no

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  Conclusory allegations are not sufficient.  *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

"[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical," *Lerner v. Fleet Bank, N.A.,* 318 F.3d 311, 128 (2d Cir. 2003), except that "the party asserting jurisdiction bears the burden of proving that the case is properly in federal court," *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir. 1994).  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Australia Bank, Ltd.,* 547 F.3d 167, 170 (2d. Cir. 2008), *aff'd,* 130 S.Ct. 2869 (2010) (internal citations and quotation marks omitted).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings."  *Id.; see also APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome." *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal citations and quotation marks omitted).  Here, Defendants argue that Plaintiff's request for injunctive relief is moot because they have already provided Plaintiff with a copy of the SPD, and the SPD is the sole plan document to which Plaintiff is entitled under ERISA.  (*See* Brickmeier Aff. ¶¶ 2, 4.)  Plaintiff does not dispute that he has received the SPD, but rather contends that there must be other formal plan documents in existence to which he is entitled and which Defendant has thus far refused to produce.

The Second Circuit has recognized that § 104(b)(4) of ERISA creates only a limited disclosure requirement on the part of plan administrators.  *See Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 147 (2d Cir. 1997) ("Congress intentionally fashioned § 104(b)(4) to limit the categories of documents that administrators must disclose on demand of plan participants[;] we think it inappropriate to infer an unlimited disclosure obligation on the basis of general provisions that say nothing about disclosure.").  Specifically, § 104(b)(4) provides that a plan administrator must provide the "latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  The Second Circuit has interpreted "other instruments" to mean "formal documents that govern the plan, not [] all documents by means of which the plan conducts operations." *Weinstein*, 107 F.3d at 143; *see also Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995) ("[T]he documents contemplated by § 104(b)(4) are those that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he

may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.")

Defendant has submitted sworn testimony that there are no formal documents that govern the Plan with respect to the HRA other than the SPD that was provided to Plaintiff.  (Brickmeier Aff. ¶ 2.)  Plaintiff, relying on *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011), argues that a SPD is not a formal plan document, and thus there must be some other formal document by which the HRA was established.  In *Amara*, the Supreme Court held that the terms of a SPD could not be enforced as the terms of an ERISA plan itself.  *Id.* at 1877–78 ("[W]e conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)" (emphasis in original)).

However, several courts have since held that a SPD can constitute a formal plan document, consistent with the holding of *Amara*, so long as no other contradictory plan document exists.  *See, e.g.*, *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("We interpret *Amara* as presenting either of two fairly simple propositions, given the factual context of that case:  (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents.  We need not determine which is the case here, though, because the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather it *is* the Plan." (emphasis in original)); *L&W Assocs. Welfare Ben. Plan v. Estate of Wines ex rel. Wines*, No. 12-cv-13524, 2014 WL 117349, at *6 (E.D. Mich. Jan. 13, 2014) ("*Amara* does not

support the broad proposition urged by the Estate, i.e. that an SPD can never serve as an ERISA plan document.  As recently as May 2011, notably, in a decision rendered just two days after *Amara*, the Sixth Circuit recognized that where there is no formal ERISA plan separate and apart from the SPD, the SPD *is* the relevant plan document." (emphasis in original) (citing *Shaffer v. Rawlings Co.*, 424 F. App'x 422 (6th Cir. 2011)); *Henderson v. Harford Life and Acc. Ins. Co.*, No. 2:11CV187 (DAK), 2012 WL 2419961, at *5 (D. Utah June 26, 2012) ("[I]n this case, Discover represents that there is not a master plan document for the SPD Plan.  As in *Eugene*, the SPD is the Plan.  Unlike *Amara*, this case does not present conflicting terms or requirements between an SPD and governing plan documents.  Accordingly, the terms of the SPD govern because there are no other ma[s]ter plan documents.").  Thus, the SPD can legally serve as the formal governing plan document for the HRA.

Plaintiff next argues that there is circumstantial evidence that other formal plan documents that have not yet been disclosed must exist.  For example, Plaintiff points to the disclaimer contained in the newsletters announcing the creation of the HRA as evidence that formal plan documents must have been drafted prior to the announcement.  The disclaimer states:  "Complete details of the HRA can be found in the formal plan documents, which are the complete and exclusive statement of the company's obligations under the Plan.  The official Plan documents shall govern in the event of a conflict between information contained in these or other documents and statements." (Aug. 2013 Newsletter at 14; *see also* Compl. ¶ 9.)  Based on the use of the present tense, Plaintiff infers that formal plan documents must have existed at the time this newsletter was sent out to participants.  Plaintiff also argues that because he was required to make a surviving spouse election prior to the effective date of the HRA, there must have been formal plan

8

documents in existence governing that election.  Defendant states that the disclaimer refers only to the SPD, which was being drafted at the time the newsletters were sent and was not required to be disclosed before it was finalized.

Although "[c]ommunicating information about future plan benefits is indeed a fiduciary obligation [and f]iduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows those statements are false or lack a reasonable basis in fact," fiduciaries are "not required to voluntarily disclose changes in a benefit plan before they are adopted." *Flanigan v. General Electric Co.*, 242 F.3d 78, 84–85 (2d Cir. 2001) (internal citations and quotation marks omitted).  Furthermore, plan fiduciaries are not required "to be perfectly prescient as to all future changes in employee benefits," nor are they required to disclose their internal deliberations in advance of adopting the formal plan.  *Id.* at 85.  Thus, the mere fact that Defendant communicated about the HRA in advance of its adoption explaining that the formal plan documents would govern the HRA does not give rise to the inference that formal plan documents existed at the time of Plaintiff's document request, which came before the effective date of the HRA.

Finally, Plaintiff points to the Gherson Amendment, which formally amended the Plan to include the HRA as evidence that there was at least one other formal Plan document regarding the HRA in existence when Barbara Brickmeier gave her sworn statement that no other such documents existed.  The Gherson Amendment, although it appears to be "formal," is identical to the terms of the SPD and thus there is nothing to suggest that the SPD cannot itself constitute "the Plan" with respect to the HRA.  Plaintiff was provided with the Gherson Amendment on the same date that the Brickmeier Affidavit was sworn, and thus Plaintiff was in possession of all formal plan documents at the time of Brickmeier's sworn statement to that effect, regardless of how the Court

characterizes the Gherson Amendment.  As Defendant correctly points out, even if the Court were to conclude that the Gherson Amendment was a formal plan document subject to the ERISA disclosure obligations, Plaintiff's claim for injunctive relief would still be moot because Defendant has already provided Plaintiff with a copy of that document.[3]

Plaintiff argues that he cannot fully dispute Defendant's contention that no other formal Plan documents governing the HRA exist without jurisdictional discovery and an evidentiary hearing.  "In resisting a motion to dismiss under Rule 12(b)(1), plaintiffs are permitted to present evidence (by affidavit or otherwise) of the facts on which jurisdiction rests.  In addition, courts generally require that plaintiff be given an opportunity to conduct discovery on these jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (internal citations and quotation marks omitted).  "Although a motion to dismiss for lack of jurisdiction cannot be converted into a Rule 56 motion, a court may nonetheless look to Rule 56(f) for guidance in considering the need for discovery on jurisdictional facts." *Id.*

Here, because Defendant moves to dismiss on grounds of mootness, the "jurisdictional fact" at issue in the motion—i.e., whether any formal plan documents exist other than the SPD—bears directly on the merits of Plaintiff's claim.  However, as Defendant argues, many of Plaintiff's document requests (*see* Plaintiff's Doc. Requests, Ex. A to Mot. for Jurisdictional Discovery) seek documents that clearly fall outside the

---

[3] Plaintiff also argues that even if this case is moot, it is a violation capable of repetition but avoiding review.  However, because the Court retains the authority to award monetary damages for any violation of the ERISA disclosure obligations, the mere fact that a claim for injunctive relief may be rendered moot does not mean that the violation itself can escape review entirely.

scope of Defendant's ERISA disclosure obligations.   Defendant argues that permitting

discovery on this issue would effectively allow Plaintiff to go on "a fishing expedition"

and would vitiate the limited disclosure requirements of ERISA because the scope of civil

discovery is far broader than the disclosure obligations under the statute.   The Court

agrees.   It cannot be the case that Plaintiff is entitled to circumvent the legislatively

enacted disclosure limits set forth in ERISA merely because he believes Defendant is

being untruthful in this case.  *Cf. Weinstein*, 107 F.3d at 146 (holding that plaintiffs were

not entitled to discovery of documents not covered by the disclosure requirement).

Defendant has submitted a sworn statement that there are no documents in existence that

govern Plaintiff's rights with respect to the HRA other than the SPD, which Plaintiff has

received.   Defendant will be bound by this statement and thus Plaintiff is entitled to rely

on it in vindicating his rights under the Plan.   Furthermore, Plaintiff has not alleged any

concrete facts that would cause this Court to call Defendant's sworn statement into

question.   Absent any such facts or circumstances, the Court concludes that Plaintiff is

not entitled to jurisdictional discovery in this action and Plaintiff's motion for such

discovery is denied.

    The Court reaches the same conclusion with respect to Plaintiff's request for  an

"evidentiary hearing" in the case.   While courts have the discretion to hold evidentiary

hearings on 12(b)(1) motions, it appears that what Plaintiff really seeks to do is to

question Brickmeier and Gherson regarding what he   perceives to be discrpenacies

between the Gherson Amendment and the Brickmeier Affidavit.   It is unclear to the

Court what such questioning would achieve other than a re-affirmance of Defendant's

sworn statement that no other formal plan documents exist.   Because Plaintiff has not put

forth any non-conclusory allegations giving rise to an inference that this statement is false, Plaintiff's motion for an evidentiary hearing is similarly denied.

In sum, the Brickmeier Affidavit represents conclusive evidence that there are no documents governing Plaintiff's rights under the HRA in existence that Plaintiff does not currently possess.  Therefore, the Court concludes that Plaintiff's request for injunctive relief ordering Defendant to produce all such formal plan documents is moot, and Defendant's motion to dismiss pursuant to Rule 12(b)(1) is granted.

**B.      Failure to State a Claim**

Defendant also moves to dismiss Plaintiff's claim for monetary damages pursuant to Rule 12(b)(6), arguing that because no formal plan documents existed at the time Plaintiff made his initial document request, Defendant did not violate ERISA by failing to provide the SPD within the thirty-day time period set forth in the statute.  Section 1132(c)(1)(B) provides that no penalties may be awarded where the violation "results from matters reasonably beyond the control of the administrator," and the non-existence of the plan document, which was not required to exist at the time of Plaintiff's information request, would appear to fall within this exception.  Defendant further argues that because this Court has the discretion not to award the statutory monetary penalty for the alleged violation in the absence of any allegation of bad faith on the part of Defendant, *see Kwan v. Andalex Group LLC*, 737 F.3d 834, 848 (2d Cir. 2013), and the Complaint lacks any allegations of bad faith, the claim for monetary damages should similarly be dismissed.[4]

---

[4] Because the Court concludes that Plaintiff has failed to plausibly allege that there were any formal plan documents in existence at the time he commenced this action, the Court need not address Defendant's argument with respect to a lack of bad faith.

As Plaintiff correctly notes, Defendant's arguments in support of dismissal pursuant to Rule 12(b)(6) rely on facts established in Defendant's affidavits, which may not properly be considered in the context of a 12(b)(6) motion.  However, even limiting itself to considering only the allegations in the Complaint, the Court concludes that Plaintiff has failed to allege sufficient facts to give rise to an inference that a formal plan document was in existence at the time he made his request such that Defendant would have violated § 104(b)(4) by failing to produce it.   Plaintiff relies on the fact that Defendant communicated with plan beneficiaries about the forthcoming implementation of the HRA and referred to "formal plan documents" in the present tense in those communications.   However, as discussed above, while plan fiduciaries may have some duty to communicate regarding upcoming changes to a plan, they have no duty to create formal plan documents before the formal adoption and effective date of the plan. *Flanigan*, 242 F.3d at 84–85.  Plaintiff admits in the Complaint that he was informed of this fact in response to his first document request and was promised that he would be provided with a copy of the plan documents once they were finalized.  Thus, the mere fact that Defendant communicated with plan beneficiaries in advance of the HRA's effective date does not give rise to an inference that any formal plan documents existed at the time of those communications such that Defendant could have violated ERISA by failing to produce them.  Therefore, Defendant's motion to dismiss is also granted with respect to Plaintiff's claim for monetary relief.

**III.     Conclusion**

For the foregoing reasons, Defendant's Motion [Doc. # 28] to Dismiss is GRANTED, and Plaintiff's Motion [Doc. # 26] for Jurisdictional Discovery and Motion [Doc. # 32] for Evidentiary Hearing are DENIED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

        /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of August, 2014.